**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TRICIA M. S.,

                                        Plaintiff,

            v.

                                                            No. 6:20-CV-1230
COMMISSIONER OF SOCIAL SECURITY,                            (CFH)

                                        Defendant.

**APPEARANCES:**                          **OF COUNSEL:**

Conboy, McKay Law Firm                    VICTORIA H. COLLINS, ESQ.
407 Sherman Street
Watertown, New York 13601
Attorneys for plaintiff

Social Security Administration            NATASHA OELTJEN, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

        Tricia M. S.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for disability insurance benefits.  See Dkt. No. 1 ("Compl.").

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 4.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff's last name by initial only.

Plaintiff moves for reversal and remand for the determination of benefits. See Dkt. No. 9. The Commissioner opposes the motion. See Dkt. No. 11. For the following reasons, the Commissioner's cross-motion for judgment on the pleadings is denied, the plaintiff's motion for judgment on the pleading is granted, and the determination of the Commissioner is reversed and remanded for further proceedings.

## I. Background

On July 18, 2017, plaintiff filed a Title XVI application for supplemental security income. See T. at 241-42.[3] Plaintiff alleged a disability onset date of June 9, 2017. See id. at 241. The Social Security Administration ("SSA") denied plaintiff's claim on September 27, 2017. See id. at 141-43. Plaintiff requested a hearing, see id. at 151-52, and a hearing was held on June 18, 2019, before Administrative Law Judge ("ALJ") Jude Mulvey. See id. at 88-124. On June 28, 2019, the ALJ issued an unfavorable decision. See id. at 50-62. On August 11, 2020, the Appeals Council denied plaintiff's request for review. See id. at 1-6. Plaintiff commenced this action on October 7, 2020. See Compl.

## II. Legal Standards

## A. Standard of Review

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to

him or her based on age, education, and work experience.  See id. § 423(d)(2)(A).

Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]

facts, subjective complaints of pain or disability, and educational background, age, and

work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has

an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since June 9, 2017, her alleged onset date.  See T. at 52.  At step two, the ALJ found that plaintiff had the following severe impairments: "fibromyalgia and associated pain, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, chronic

diarrhea, vasoactive intestinal peptide (VIP), obesity, and depressive disorder[.]" Id. at 52-53.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 53.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except the following:

> the claimant can perform simple routine repetitive work in an environment with few exceptions if any workplace changes; the claimant can occasionally balance, stoop, kneel, crouch, and crawl; the claimant requires the use of a cane for prolonged ambulation, walking on uneven terrain, or ascending and descending slopes; the claimant retains the ability to carry small objects such as files in the free hand; the claimant can tolerate no more than moderate levels of noise as defined in Appendix D of the *Selected Characteristics of Occupations*, 1993 edition; the claimant cannot work at unprotected heights, climb ropes, ladders, and scaffolds or work in close proximity to dangerous machinery or moving mechanical parts of equipment; and the claimant needs to have an option to sit or stand for 5 minutes after 30 minutes without being off task.

Id. at 55.  At step four, the ALJ determined that plaintiff was unable to perform any past relevant work.  See id. at 60.  At step five, considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id.  Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, since June 9, 2017, through the date of this decision[.]"  Id. at 61.

## IV. Arguments[4]

Plaintiff argues that the ALJ's RFC determination failed to include sufficient limitations for her fibromyalgia and headaches; and that the ALJ gave insufficient consideration to the opinions of her treating provider, Thomas Birk, D.O., and gave too much weight to consultative examiner T. Inman-Dundon, Ph.D.  See Dkt. No. 9 at 18-25.  The Commissioner argues that the ALJ accounted for limitations from plaintiff's headaches and fibromyalgia in the RFC determination and gave appropriate weight to the various physicians.  See Dkt. No. 11 at 11-16.  Further, the Commissioner contends that plaintiff failed to show "how the evidence was inadequate for the ALJ to determine whether she was disabled."  Id. at 16.


## V. Discussion
### A. Fibromyalgia

Plaintiff argues that the ALJ's RFC determination did not include sufficient limitations for her fibromyalgia.  See Dkt. No. 9 at 18-24.  Plaintiff contends that her limitations from fibromyalgia are supported by objective evidence and subjective complaints, and the ALJ failed to consider the evidence as a whole.  See id. at 19, 22 (citing Social Security Rulings ("SSR") 12-2p, 96-8p).  The Commissioner argues that the ALJ's assessment of plaintiff's fibromyalgia is supported by substantial evidence as the ALJ (1) appropriately found plaintiff's fibromyalgia to be a severe impairment and accounted for its resulting limitations by limiting plaintiff to light work, (2) discussed her

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

testimony about fibromyalgia, (3) and reviewed the objective findings related to her tender points.  See Dkt. No. 11 at 11.

At step two of the disability analysis, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental abilities to perform basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920.  Basic work activities include walking; standing; sitting; lifting; carrying; pushing; pulling; reaching; handling; seeing; hearing; speaking; understanding, remembering, and carrying out simple instructions; using judgment; and responding appropriately to supervisors, co-workers, and usual work situations.  See Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quoting Gibbs v. Astrue, 07-CV-10563 (AJP), 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008)); see also 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to screen[ing] out de minimis claims, the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe."  Id. (alterations in original) (citations and internal quotation marks omitted).  The failure to find an impairment severe is generally harmless "where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe."  Takeylyn G. v. Saul, No. 1:18-CV-292 (ATB), 2019 WL 3369266, at *4 (N.D.N.Y. July 26, 2019).

"[I]n formulating [a] [p]laintiff's RFC, the ALJ [i]s not required to accept every limitation in the various medical opinions nor craft an RFC mirroring a particular

opinion." Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL
5848776, at *9 (N.D.N.Y. Oct. 1, 2020).  However, "an ALJ cannot simply pick and
choose evidence in the record that supports his [or her] conclusions, . . . nor can he [or
she] rely upon mischaracterized evidence to justify his rejection of a treater's opinion or
substantiate his own lay opinions[.]" Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021
WL 4392986, at *26 (S.D.N.Y. Sept. 24, 2021) (internal citations and quotation marks
omitted).  "Indeed, it is error for an ALJ to pick out a few isolated instances of
improvement over a period of months or years and treat them as a basis for concluding
[that] a [claimant] is capable of working." Id. (citations and internal quotation marks
omitted) (alterations in original).

As to a plaintiff's subjective complaints, under SSR 16-3p, "'[t]he ALJ must
consider the entire case record, including objective medical evidence, a claimant's
statements about the intensity, persistence, and limiting effects of symptoms,
statements and information provided by medical sources, and any other relevant
evidence in the claimant's record.'" Kearney v. Berryhill, No. 1:16-CV-00652 (MAT),
2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (alteration in original) (quoting Vered
v. Colvin, No. 14-CV-4590 (KAM), 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017)).
The ALJ must "clearly demonstrate[] [that] he [or she] considered the entire case record
. . . as required by SSR 16-3p." Id. ("The ALJ provided significant detail regarding the
basis of this finding, noting there is little objective evidence of record to support the
alleged severity of the symptoms [the] [p]laintiff described at the hearing.").

Examining the record alongside a plaintiff's subjective allegations is complicated
in cases with a fibromyalgia diagnosis because it "is a complex medical condition

characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  SSR 12-2p, 2012 WL 3104869, at *2 (July 23, 2012).  "Indeed, claimants with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions."  Harrison v. Comm'r of Soc. Sec., No. 18-CV-6715 (FPG), 2020 WL 607623, at *2 (W.D.N.Y. Feb. 7, 2020) (citation and internal quotation marks omitted).  As such, "the ALJ is not entitled to rely solely on objective evidence -- or lack thereof -- related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record."  Anysha M. v. Comm'r of Soc. Sec., No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020) (affirming where the ALJ found fibromyalgia severe, considered the Listing for inflammatory arthritis, and "[r]ather than improperly focusing on positive objective findings to discount [p]laintiff's allegations of fibromyalgia and related symptoms, the ALJ's decision indicate[d] [] careful consideration[.]"); see also Jackeline R.R. v. Comm'r of Soc. Sec., No. 19-CV-00804 (JGW), 2021 WL 22507, at *4 (W.D.N.Y. Jan. 4, 2021) (determining that the ALJ committed no error where he found the plaintiff's fibromyalgia to be severe, "evaluated [it] under [SSR] 12-2p[,]" "extensively discussed the characteristics of fibromyalgia[,]" and "objective findings on exam were also relatively normal and inconsistent with allegations of severe pain.").

### 1. Analysis

The ALJ found plaintiff's fibromyalgia to be a severe impairment.  See T. at 52. The ALJ determined that the record did not support plaintiff's allegation "that her

physical impairments significantly limited her from performing work activity." Id. at 56.

In reaching the RFC determination, the ALJ discussed plaintiff's testimony that she is

unable to work due, in part, to her fibromyalgia, because she has "problems lifting,

standing, walking, sitting, climbing stairs, kneeling, squatting, reaching, and using her

hands." Id. at 55-56.  The ALJ summarized plaintiff's allegations that previous

conservative pain management and treatments were ineffective at relieving her

symptoms, and that her pain level ranged from four-to-six out of ten.  See id. at 56.  The

ALJ noted that plaintiff "sought very limited alternative treatment modalities to indicate

uncontrolled symptoms or inadequate relief of symptoms[,] [and] [t]here was no record

of ongoing evaluation or treatment with an orthopedic surgeon, pain management

specialist, or other specialist." Id.

As to objective medical evidence, the ALJ noted that plaintiff "had 16 trigger

points identified[.]"  T. at 56 (citing id. at 1101[5]).  However, plaintiff's muscle strength in

her upper and lower extremities was full; and "[a]t times, [plaintiff] did not have trigger

points in her thoracic spine . . . [and she] reported the injections provided good relief of

the pain[.]" Id.  The ALJ also reviewed "diagnostic imaging and clinical examinations"

and determined that they "do not demonstrate that [plaintiff's] symptoms significantly

limited her from performing work activity." Id.  Abdul Latif, M.D., reviewed two 2016

EMGs showing normal results for plaintiff's upper right and lower left extremities.  See

id. at 314, 318.  A 2016 MRI showed mild cervical spondylosis of plaintiff's cervical

spine at C4-5 and C5-6 and no extrinsic nerve root compression, but the lumbar spine

---

[5] The ALJ cited to "Exhibit 27F, p.3[,]" however, that is a record reflecting plaintiff's mental health treatment.  T. at 56 (citing id. at 1096).  The Court believes this was a scrivener's error as it is Exhibit No. 28F, p. 3 that reflects plaintiff's tender points.  See id. at 1101.

indicated mild diffuse disc bulging at L5-S1.  See id. at 315-16.  The imaging showed no disc herniations, stenosis of the spinal canal, or foraminal narrowing.  See id.  Imaging in 2017 also showed that plaintiff's hip was unremarkable.  See id. at 702.  Finally, "there was no convincing scintigraphic evidence of abnormal tracer activity in left adrenal lesion."  Id. at 56 (citing id. at 692).

The Court determines that the ALJ mischaracterized and ignored relevant portions of the record related to plaintiff's fibromyalgia.  The records that the ALJ cites in support of the contention that plaintiff "did not have trigger points in her thoracic spine" reflect the opposite.  T. at 56.  The records state:  "Back: no obvious deformities, no evident muscle spasm, decreased range of motion, spasm, thoracic paraspinal tenderness, lumbar paraspinal tenderness, thoracic trigger points evident, lumbar trigger points evident."  Id. at 1128, 1140, 1152, 1156 (emphasis added).  The same records reflect that plaintiff had "pain with lumbar spine extension and lateral rotation to the right, pain with lumbar spine extension and lateral rotation to the left, pain to palpation over the right facet joints, pain to palpation over the left facet joints."  Id. at 1128, 1140, 1152, 1156.  Moreover, plaintiff had "pain at extremes of ROM, distinct trigger points noted in paracervical musculature, distinct trigger points noted in trapezius left, distinct rigger points noted in trapezius right, diffusely tender, paraspinal tenderness of the cervical spine bilaterally[.]"  Id. at 1128, 1140, 1152, 1155.  The record reflects that in December 2017, plaintiff reported "that her trigger point injections provided good relief of pain in the mid and low back but minimal relief in the neck[.]"  Id. at 1133.  In 2018, however, "[p]atient is s/p cervical medical branch blocks which provided minimal relief and aggravated the pain.  Will hold off on injections for now."  Id. at 1153.

Similarly, "[f]or the neck, mid and low back pain, patient is not keen on getting anymore injections for now as they are only causing pain aggravation." Id. at 1157; see Velasquez, 2021 WL 4392986, at *26 (noting that an ALJ cannot "pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding [that] a [claimant] is capable of working.").

The record reflects that plaintiff's pain ranged from four-to-ten out of ten, but was most often a six out of ten. See T. at 1034, 1044, 1051, 1073. Additionally, plaintiff testified that her "[f]ibromyalgia pain is literally like almost everywhere[,]" and that to manage her symptoms she tried "pain solution and water tone"; deep injections; "acupuncture[] [t]hat sent [her] into flare up[,]" so she tried "to do less needles more often"; opioids; medical marijuana; Aleve; and Ibuprofen. Id. at 101-103. Records from Dr. Latif also show that plaintiff had "[c]hronic neck and UE Pain[,]" and "[c]hronic low back pain and LE pain." Id. at 312. Dr. Latif noted "mild-to-moderate tenderness in [plaintiff's] cervical spine, shoulder muscles and lumbar spine." Id. at 311. Although Dr. Latif's objective examinations showed that plaintiff had normal results in her upper right and lower left extremities, and no nerve root compression or disc terminations, see id. at 314-16, "'by definition' fibromyalgia means that the claimant's accounts of pain and fatigue would seem, in all likelihood, out of proportion with the available objective evidence." Cabibi v. Colvin, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (remanding where the ALJ "failed to consider the uniquely subjective nature of the [p]laintiff's fibromyalgia condition and selectively cited from the record in discrediting her complaints.") (citation omitted). Moreover, a January 2019 treatment record from

Shirley Tuttle-Malone, D.O., revealed that plaintiff was "[t]ender anywhere[,] upper back[,] lower back[,] abdomen[,] basically anyplace we touched her[.]"  T. at 1079.

The Commissioner argues that "the ALJ discussed fibromyalgia in determining [p]laintiff's limitations . . ., which shows that she attributed [p]laintiff's limitations at least in part to fibromyalgia[,] . . . [and that] a fair reading of the ALJ's decision shows that she cited [the objective] evidence in the context of [p]laintiff's cervical and lumber [sic] degenerative disc disease . . . or alleged hip pain . . . – not to discount Plaintiff's fibromyalgia limitations."  Dkt. No. 11 at 12.  First, "[b]ecause [t]he ALJ did not articulate this reasoning in his decision, the court cannot accept such post hoc rationalization."  Hall v. Colvin, No. 1:15-CV-01189 (LEK/ATB), 2016 WL 6989806, at *8, n.3 (N.D.N.Y. Nov. 29, 2016) (citations and quotation marks omitted).  Second, the paragraph in which the ALJ references plaintiff's EMG and MRI tests is started by the ALJ determining that "[t]he diagnostic imaging and clinical examination results in the record do not demonstrate that the claimant's symptoms significantly limited her from performing work activity."  T. at 56.  The ALJ does not clarify whether the imaging discounts plaintiff's allegations as it relates to her fibromyalgia or otherwise, and the Court will not speculate as to the reasoning.  See Bartrum v. Astrue, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012) ("This Court simply cannot, and will not, re-weigh the medical evidence and/or create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

James Hyla, M.D., plaintiff's rheumatologist, opined that plaintiff's "MCPs and PIPs are tender bilaterally.  However, the only questionably swollen areas are left PIPs 2-4.  There is questionable swelling with tenderness in both wrists."  T. at 955.  Dr. Hyla

noted that plaintiff "ha[d] been followed by [a] pain management group[,]" but that it "was not helpful." Id. at 950, 954. As an alternative, Dr. Hyla recommended acupuncture which "helped quite bit[,] but it was too costly for her to continue." Id. at 962; see also id. at 954. Instead, Dr. Hyla recommended CBD oil. See id. at 964. The ALJ did not reference Dr. Hyla's treatment record.

Dr. Birk noted that plaintiff was on Naprosyn and Ibuprofen, but both were stopped "because of new, impressive microscopic hematuria." T. at 991. He "took her off of NSAID's due to new iron deficiency anemia." Id. at 998. The ALJ determined that plaintiff's allegations were inconsistent with her symptomology, in part, because she "sought very limited alternative treatment modalities" and "did not seek ongoing aquatic therapy, osteopathic manipulative treatment (OMT), acupuncture, chiropractic care, biofeedback training, spinal cord stimulator, or other treatment methods." Id. at 58. However, plaintiff testified that she tried multiple treatment options such as acupuncture, medical marijuana, and opioids, and Dr. Hyla and Dr. Birk noted that she would try a new method when a previous one failed. See id. at 101-03, 962, 964, 991, 998; see, e.g., Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *7 (N.D.N.Y. May 24, 2021) ("The ALJ further misrepresented the evidence by stating that plaintiff 'did not even require pain medication[,]'" whereas "the relevant record indicate[d] that [the] plaintiff" was trying diet and exercise instead of medication at the time, and the ALJ did "not consider whether plaintiff was actually successful in this endeavor[.]"). Importantly, the ALJ did not discuss Dr. Birk's lengthy treatment record and how that impacted the consistency of plaintiff's allegations and the RFC determination. See Anysha M., 2020 WL 1955326, at *3. As such, the ALJ's mischaracterizations and failure to clearly

assess relevant record evidence warrants remand for further reconsideration of the record as a whole.

### B.  Weight of Medical Opinions

Plaintiff argues that the ALJ did not appropriately consider Dr. Birk's opinions despite their being supported by objective record evidence.  See Dkt. No. 9 at 19-24.  In her motion, plaintiff relies heavily on Dr. Birk's findings to support greater limitations. See id. at 19-25.  Moreover, plaintiff argues that the ALJ gave inappropriate weight to Dr. Inman-Dundon, who reviewed the record in 2017, and, therefore, did not have the benefit of numerous treatment records from 2018 and 2019.  See id. at 24-25.  The Commissioner argues that (1) the ALJ rightfully discounted Dr. Birk's findings because Dr. Birk failed to reconcile his findings of certain limitations with his subsequent opinions, and (2) that the ALJ's reliance on Dr. Inman-Dundon's opinion was appropriate because the record does not indicate that plaintiff's symptoms deteriorated from the time of his review to the ALJ's decision.  See Dkt. No. 11 at 15-16.

"Under the new regulations, applicable here, ALJs do not defer to, or give specific evidentiary weight to, any medical opinions.'"  David B.C. v. Comm'r of Soc. Sec., No. 1:20-CV-01136 (FJS/TWD), 2021 WL 5769567, at *8 (N.D.N.Y. Dec. 6, 2021) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  Rather, "the Commissioner must consider all medical opinions and evaluate their persuasiveness based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and other factors."  Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021) (internal quotation marks omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5)).  "Supportability and consistency are the most important factors" in determining whether a medical opinion is

persuasive.  20 C.F.R. § 416.920c(b)(2).  "Although the new regulations eliminate the perceived hierarchy of medical sources [and] deference to specific medical opinions . . . the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'"  Brian O. v. Comm'r of Soc. Sec., 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (alterations in original) (quoting 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b)).  An ALJ is explicitly required to "explain how [he or she] considered the supportability and consistency factors."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ "must consider, but need not explicitly discuss, the [other] three factors."  Brian O., 2020 WL 3077009, at *5 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In Andrew G., this Court determined that the ALJ committed reversible error because "the ALJ's decision made only passing reference to more than 1400 pages of [the] [p]laintiff's mental health records, including some . . . that directly contradicted the ALJ's recitation of the facts."  2020 WL 5848776, at *9.  "This inadequate review failed to set forth the crucial factors justifying the ALJ's findings with sufficient specificity to allow the Court to determine whether substantial evidence supported the assigned persuasiveness of the opinions[.]"  Id.  Similarly, in Amber H., the ALJ discounted the plaintiff's treating providers' opinions as "unsupported by and inconsistent with [the] plaintiff's treatment records[.]"  2021 WL 2076219, at *7.  The Court found that the "ALJ's observations [related to the plaintiff's back pain], even if in good faith, [were] entirely out of context[,]" because the "isolated records" the ALJ relied on were contradicted in plaintiff's treatment notes.  Id. ("Notably, the ALJ did not address this evidence, nor did he address the consistency between [the] plaintiff's pain as reported

in these treatment notes, and the opinions of [the] plaintiff's treating providers."). Additionally, the Court found error in the ALJ's review of a consultative examiner's opinion where the ALJ stated that the "opinion regarding the plaintiff's marked limitations [for lifting and carrying] are [sic] inconsistent with [the consultative examiner's] own observations that the claimant had negative straight leg testing, full strength, normal neurological and sensory function, and no distress." Id. at *8.  The Court found that "the ALJ's fleeting discussion of [the] opinion falls short of satisfying the articulation requirements contained in the new regulations, especially considering the ALJ's failure to discuss the extent to which [the] opinion was consistent with the other evidence of record, medical or otherwise, pursuant to § 416.920c(c)(2)." Id.; see also Matthew P. v. Comm'r. of Soc. Sec., 3:20-CV-1586 (TWD), 2021 WL 5629070, at *8 (N.D.N.Y. Dec. 1, 2021) (concluding that the ALJ's determination was legally insufficient because the ALJ concluded that an "opinion was persuasive because of [the physician's] 'professional expertise, program expertise, and ability to review the entire record[,]'" but "failed to explain why or how" the opinions "were supported by 'objective medical evidence and supporting explanations.'").

### 1. Analysis

The ALJ recounted Dr. Birk's October 2018 medical source statement related to plaintiff's physical limitations.  See T. at 59 (citing id. at 1067-72).  Dr. Birk opined that plaintiff could occasionally lift and carry up to ten pounds; could sit for less than an hour, and stand and walk for less than fifteen minutes; required a cane to ambulate; could never reach overhead, push, or pull; had limitations in handling, fingering, and feeling; could never climb stairs, ramps, ladders, or scaffolds; and could never balance, stoop,

kneel, crouch, and crawl.  See id. at 1068-70.  Moreover, Dr. Birk determined that plaintiff could not tolerate unprotected heights, dust, odors, fumes, extreme cold, extreme heat, vibrations, or noise.  See id. at 1071.  The ALJ found Dr. Birk's opinion "somewhat persuasive" and "somewhat consistent with the record," concluding that the portion regarding plaintiff's cane was persuasive, but "the remaining limitations are not supported by the record."  Id. at 59.

The ALJ also reviewed Dr. Birk's 2019 Fibromyalgia Medical Source Statement which opined that plaintiff "could not function in any kind of normal physical capacity[,]"[6] she could walk for fifteen to twenty minutes, and would need a five-minute break every fifteen minutes.  T. at 1101-1102.  Dr. Birk opined that plaintiff had marked limitations in activities of daily living and completing tasks in timely manner; moderate limitations in maintaining social functioning; would be off task twenty-five percent or more of the time; could grasp and turn objects and use her fingers for twenty percent of an eight-hour workday; could reach in front of her body for thirty percent of a workday; and could reach overhead for five percent of a workday.  See id. at 1103-1104.  The ALJ found that this opinion was "not persuasive and not consistent with the record.  When compared to his earlier opinions, no explanation is provided for change in [plaintiff's] inability to perform any work[.]"  Id. at 59.  Additionally, the ALJ noted Dr. Birk findings that plaintiff is "limited in fingering and reaching with her bilateral upper extremities . . . has marked limitations in her ability to concrete and maintain pace . . . [and] has

---

[6] The ALJ quoted Dr. Birk as stating that plaintiff "cannot function in any type of sustained physical activity[,]" which does not appear in the record.  T. at 59.

moderate limitations in her ability to interact with others." Id.[7]  The ALJ explained that "the portion of the opinion regarding [plaintiff's] limitations on excessive reaching, handling, fingering, and feeling and the claimant's ability to work is not considered as it is not supported by the record and involves a matter of employability that is reserved for the Commissioner." Id. at 59-60.[8]

As to the consultative examiners, the ALJ noted that "[s]tate agency medical consultant J. Poss, M.D., opined that the claimant retains the ability to perform work activity at the light exertional level[.]" T. at 58.  The ALJ concluded that "Dr. Poss' opinion is persuasive and consistent with the record.  It is generally supported by the record, which does not reflect that the claimant is significantly limited from performing light work activity." Id.  Similarly, the ALJ determined that "[s]tate agency medical consultant T. Inman-Dundon, Ph.D., opined that the claimant is able to perform simple work[.] [] Dr. Inman-Dundon's opinion is persuasive and consistent with the record.  It is generally supported by the record, which does not reflect that the claimant is significantly limited from performing work activity at the light exertional level." Id.

The ALJ failed to provide sufficient explanations for the persuasiveness he assigned to the various physicians, and failed to discuss certain evidence altogether, such that the Court cannot glean the ALJ's rationale in formulating plaintiff's RFC.  See

---

[7] The ALJ does not provide a record cite for this contention but references "Exhibit 32F" at the beginning of the paragraph.  See T. at 59.  "Exhibit 32F" discusses plaintiff's headaches and makes no findings as to plaintiff's limitations in reaching or fingering.  See id. at 1116-19.

[8] The ALJ also discussed Dr. Birk's two medical source statements relating to plaintiff's headaches and found them "somewhat persuasive and consistent with the record regarding the limitations her headaches and pain caused." T. at 59 (citing id. at 918-21, 1116-19).  As the Court finds the ALJ's assessment of (1) plaintiff's fibromyalgia, (2) Dr. Birk's opinions and treatment record as it relates to such, and (3) the consultative examiners' opinions requires remand, review of the details of Dr. Birk's headache-related medical source statements is not necessary.  "However, on remand, the ALJ should consider the entirety of the record and reach an RFC supported by substantial evidence." Javon W. v. Comm'r of Soc. Sec., No. 3:17-CV-1230 (CFH), 2019 WL 1208140, at *8, n.5 (N.D.N.Y. Mar. 13, 2019).

Coleman v. Comm'r of Soc. Sec., No. 5:14-CV-1139 (GTS/WBC), 2015 WL 9685548, at

*5 (N.D.N.Y. Dec. 11, 2015), report and recommendation adopted sub nom., 2016 WL

109994 (N.D.N.Y. Jan. 8, 2016) (quotation marks and citation omitted) (alterations in

original) ("To be sure, [a]n ALJ is not required to discuss in depth every piece of

evidence contained in the record, so long [as] the evidence of record permits the Court

to glean the rationale of an ALJ's decision.").  Dr. Birk determined that plaintiff's

fibromyalgia "symptoms effect [sic] her tremendously every day of her life."  T. at 991.

In April 2019, Dr. Birk opined that plaintiff "could not function in any kind of normal

physical capacity[,]" but could walk every fifteen to twenty minutes for five minutes at a

time and would need a break every five minutes.  Id. at 1101-1102.  Dr. Birk's extensive

treatment record also indicates the various medications plaintiff was prescribed.  See id.

at 966-1043.  Although the ALJ summarized Dr. Birk's medical source statements, he

did not explain how Dr. Birk's findings "change[d]" where Dr. Birk consistently opined

that plaintiff could not sit or stand for more than fifteen to twenty minutes at a time and

would need to take breaks every fifteen to twenty minutes.  Id. at 59; see id. at 1068,

1070, 1072, 1101-1102.  Therefore, the Court is "left to surmise how the ALJ" found that

limiting plaintiff to standing or walking for fifteen minutes at a time is inconsistent with

being unable to perform in a normal physical capacity.  Amber H., 2021 WL 2076219, at

*6.[9]  As discussed above, the ALJ failed entirely to discuss Dr. Birk's lengthy treatment

record and whether it was consistent with the remaining record, including records that

---

[9] The Commissioner argues that Dr. Birk "fail[ed] to reconcile his opinion of certain limitations . . .  with his
subsequent opinion that [p]laintiff could not 'function in any kind of normal physical capacity' . . . and
needed a break every 15 minutes[.]"  Dkt. No. 11 at 16.  However, the Commissioner does not explain
how Dr. Birk's limitations are inconsistent.  See T. at 59, 1067-71, 1101-1104.  As discussed throughout
this Memorandum-Decision and Order, because the Court cannot otherwise glean the ALJ's rationale on
this issue, remand is warranted.

indicated that plaintiff's symptoms were uncontrolled.[10]  See T. at 59, 991; see Matthew P., 2021 WL 5629070, at *8 (finding error where "the ALJ's [determinations] include no analysis or discussion of [the] [p]laintiff's numerous medical records from 2019. . . . Absent some indication that the ALJ considered these records, this Court cannot discern whether and to what extent the ALJ's findings are based upon an examination of supportability and consistency.").

The ALJ also concluded that Dr. Birk's opinion regarding plaintiff's use of a cane was supported by the record, but the remaining limitations were not.  T. at 59.  This includes Dr. Birk's opinion that plaintiff could not reach, stoop, crouch, or crawl.  See id. at 1070.  The record reflects medical opinions from other providers supporting Dr. Birk's opinion.  Elke Lorensen, M.D., opined that plaintiff "[c]an walk on heels and toes without too much difficulty."  Id. at 898.  Dr. Lorensen also opined that plaintiff had "moderate limitations for bending, lifting, reaching, and squatting."  Id. at 900.  Additionally, records

---

[10] Dr. Birk was plaintiff's primary care physician and had known her for "approximately 11 years" by 2019. T. at 1111.  In his 2019 fibromyalgia medical source statement, Dr. Birk noted that his opinion stemmed from his seeing plaintiff once or twice a month for numerous years.  See id. at 1099.  The ALJ did not discuss the nature of the treating relationship but referenced a letter Dr. Birk wrote in response to a request from plaintiff; and the ALJ found that the "letter is not persuasive and not consistent with the record."  Id. at 59.  In the letter, Dr. Birk notes his eleven-year treatment relationship and that he believes plaintiff's "ongoing difficulties with chronic pains/fibromyalgia, anxiety, fatigue, bouts of tremor and flushing, [and] chronic headaches have been overwhelming for her to function at any capacity in any form of full time employment."  Id. at 1111; see Pamela H. v. Kijakazi, No. 5:20-CV-00304 (NAM), 2021 WL 4307457, at *6 (N.D.N.Y. Sept. 22, 2021) ("Arguably, the ALJ should have recognized that [the] opinion was built upon [the] [p]laintiff's long treating relationship . . . .  However, . . . the ALJ is not required to explain whether and how she considered the medical source's treating relationship with a claimant, unless there are equally persuasive medical opinions about the same issue[.]") (citing 20 C.F.R. § 416.920c(b)(2)-(3)).  The ALJ gave equal weight to Drs. Poss and Inman-Dundon, finding both opinions "persuasive[.]"  T. at 58.  However, the ALJ did not discuss the "other most persuasive factors" in 20 C.F.R. § 416.920c(c)(3)-(5).  See id.  Plaintiff does not raise this issue, but on remand, the ALJ should reassess plaintiff's RFC with reference to all of the relevant medical opinions and accord each the persuasiveness "[s]he deems appropriate under the regulations, considering the entire administrative record."  Pferrer-Tuttle v. Colvin, No. 1:14-CV-00727 (MAT), 2015 WL 5773524, at *7 (W.D.N.Y. Sept. 30, 2015); see also Selembo v. Comm'r of Soc. Sec., No. 19-CV-2902 (KAM), 2021 WL 1428599, at *8 (E.D.N.Y. Apr. 15, 2021) ("On remand, the ALJ is directed to comprehensively weigh and apply the regulatory factors . . . .").

from the University of Rochester Medical Center reflect that on one occasion, plaintiff "walked with a cane[,]" but her "gait [wa]s essentially normal[,]" and on another, she "had mild give way weakness throughout . . . pushed off with arms to stand, has antalgic gait, slow and guarded[.]" Id. at 935, 938, 942; see, e.g., Vellone v. Saul, No. 1:20-CV-00261 (RAK/HP), 2021 WL 319354, at *9 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted sub nom., 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (noting that the ALJ discounted a physician's opinion as being inconsistent with the record that reflected the plaintiff had a normal gait, but ignored record evidence that the "[p]laintiff had an 'antalgic' gait—which means that Plaintiff demonstrated an abnormal walking pattern due to pain."). The ALJ considered Dr. Lorensen's opinion persuasive aside from the limitation on reaching because "[t]here is minimal record evidence to support the identified limitations on reaching." Id. at 58. This conclusion raises two problems: (1) it ignores Dr. Birk's opinion that a reaching limitation was warranted; and (2) Dr. Lorensen's opinion corroborates Dr. Birk's limitations on stooping, kneeling, and crouching; making it unclear to what extent Dr. Birk's limitations were unsupported by the record. The failure to reconcile these opinions leaves the Court unable to determine whether the ALJ's assessment of Dr. Birk's opinion is supported by substantial evidence.

Moreover, the record reflects that plaintiff was in persistent pain and seemingly unable to find a workable solution. See, e.g., T. at 1025, 1040, 1079, 1128, 1140. The ALJ's failure to discuss these treatment records or their consistency with the remaining record mandates further consideration. Cf. Butler v. Comm'r of Soc. Sec., No. 1:16-CV-0500 (TWD), 2017 WL 2834482, at *10 (N.D.N.Y. June 29, 2017) (upholding the ALJ's

RFC determination for sedentary work where the ALJ "provided a much more balanced analysis of all the evidence" including the plaintiff's subjective complaints and the objective record evidence, and "the majority of [the] [p]laintiff's treatment during the relevant time period was for her lumbar spine impairment, not fibromyalgia.").  Finally, although the ALJ determined that the state agency medical consultants' opinions were "persuasive and consistent with the record[,]" she provided no substantive explanation for why or how their opinions were "generally supported by the record."  T. at 58.  Such a cursory statement is insufficient for effective review by the Court.  See, e.g., Howard D. v. Saul, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *13 (N.D.N.Y. Mar. 26, 2021) ("[T]he ALJ did not 'explain how [she] considered the supportability and consistency factors' as she was required to under C.F.R. § 404.1520c(b)(2).  The ALJ rendered a two-sentence explanation as to why she gave 'little weight' to [an] [o]pinion, based partly on a reason that was factually incorrect[.]").  Accordingly, remand is warranted for further consideration of the various medical opinions and the extent to which they are consistent with, and supported by, the record.  See Amber H., 2021 WL 2076219, at *9 (remanding for the ALJ to "specifically explain how he considered the supportability and consistency factors as to each medical opinion per § 416.920c(b)(2), taking care to support his evaluation with substantial evidence reflected in the longitudinal record.").[11]

---

[11] As remand is required, the Court does not reach plaintiff's remaining arguments.  See, e.g., Howard D., 2021 WL 1152834, at *14.

## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 9, is **GRANTED**; and it is further

**ORDERED**, that defendant's Cross-Motion for Judgement on the Pleadings, Dkt. No. 11, is **DENIED**, and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision & Order.

**IT IS SO ORDERED.**

Dated: January 13, 2022
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge